UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
U.S. BANK NATIONAL ASSOCIATION NOT
IN ITS INDIVIDUAL CAPACITY BUT
SOLELY AS TRUSTEE FOR THE RMAC
TRUST, SERIES 2016,

                          Plaintiff,                    **REPORT AND**
                                                                             **RECOMMENDATION**
                                                                            19-CV-2229 (GRB) (ARL)

      -against-

MARLENE SAGER AKA MARLENE CALDWELL,

                          Defendant.
-------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Plaintiff U.S. Bank National Association, not in its individual capacity but solely Trustee for the RMAC Trust, Series 2016-CTT ("Plaintiff") brings this foreclosure action against Marlene Sager aka Marlene Caldwell. Before the Court, on referral from District Judge Brown, is Plaintiff's motion for default judgement. For the reasons that follow, the undersigned respectfully recommends that the motion for default judgment be denied, without prejudice to allow Plaintiff to properly serve the motion for substitution and to demonstrate standing to pursue the claims.

## BACKGROUND

**A.**    **Factual Averments**

      Plaintiff commenced this action on April 16, 2019, seeking to foreclose on a residential mortgage encumbering the property commonly known as 92 Davis Street, Locust Valley, New York 11560 (the "Property").[1] ECF No. 1. Plaintiff U.S. Bank, National Association, not in its

---

[1] Plaintiff filed a Certificate of Merit pursuant to CPLR 3012-B on the same day that the Summons and Complaint was filed.

individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT is a citizen of Ohio because it is a national banking association with a main office as set forth in its Articles of Association located at 425 Walnut Street, Cincinnati, OH 45202.  Comp. ¶ 2.  Defendants Brian R. Sager Jr., Alessandra Sager and Christopher Sager ("Substituted Parties") are heirs of Marlene Sager AKA Marlene Caldwell ("Decedent") who was the record owner and mortgagor of the Property. The Decedent passed away post-commencement of this action on February 21, 2022, and by Order dated September 23, 2022 Decedent's three children, Brian R. Sager Jr., Alessandra Sager, and Christopher Sager, were substituted in place of the Decedent.  ECF Nos. 32 & 40.

On June 22, 2009, Decedent executed and delivered a Note whereby she promised to pay the sum of $401,000.00 plus interest on the unpaid amount due to Bank of America, N.A. ("BOA").[2]  Compl. ¶ 8; Fourtner Dec. ¶ 3.  As security for the payment of the Note, she also duly executed and delivered a Mortgage, in the amount of $401,000.00.  *Id.* at ¶ 9; Fourtner Dec. ¶ 3.  The Mortgage was recorded in the Nassau County Clerk's Office on July 21, 2009 at Liber M33967, Pages 698-709, and the recording tax was paid.  Fourtner Dec. ¶ 3.

The Mortgage securing the Note on the Property was assigned numerous times and each assignment was recorded in the Nassau County Clerk's office. Below is a chart setting forth the various assignments Plaintiff has provided to the Court.  *See* Younger Aff. Ex. 4.

| Date (date recorded) | Assignor | Assignee |
| --- | --- | --- |
|  |  |  |

---

[2] In support of the motion for default judgment Plaintiff has submitted the Declaration of Tracy Fourtner ("Fourtner Dec."), ECF No. 48.  Attached as Ex. G to the Fourtner Dec. is the Affidavit of Anthony Younger, Assistant Secretary of Rushmore Loan Management Services, appointed as attorney in fact for Plaintiff ("Younger Aff."), which attaches copies of documents relevant for purposes to Plaintiff's motion for default judgment.  For ease of citation throughout, the undersigned will cite to the Younger Aff., which can be found at ECF No. 48-7, without further citation.

| July 7, 2011 (August 18, 2011) | Mortgage Electronic Registration Systems, Inc., as nominee for BOA | BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. |
|---|---|---|
| September 12, 2013 (July 6, 2017) | BOA s/b/m to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. | Nationstar Mortgage LLC ("Nationstar") |
| January 27, 2017 (February 16, 2017) | BOA s/b/m to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. | Nationstar |
| June 18, 2018 (June 14, 2018) | Nationstar | BOA s/b/m to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. |
| August 18, 2018 (August 20, 2018) | Nationstar | U.S. Bank, National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT |

Interestingly, this mortgage was assigned twice from BOA s/b/m to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. to Nationstar -- once in September 2013, which was not recorded until July 2017 (this assignment was prior to Nationstar's preparation of the Lost Note Affidavit, Affidavit of Edith Gomez dated November 4, 2016, Younger Aff. Ex. 1) -- and again on January 27, 2017, subsequent the preparation of the Lost Note Affidavit. The Lost Note Affidavit itself does not indicate whether Nationwide was the owner of the Note at the time the Lost Note Affidavit was prepared. The Lost Note Affidavit states only that "NSM was entitled to enforce the instrument when the loss of possession occurred or has directly or indirectly acquired the right to enforce the instrument from a person who was entitled to enforce the instrument when the loss of possession occurred." Younger Aff.

3

Ex. 1. Also of note from the chart above, it appears the Nationstar assigned the Mortgage on the Property twice, first to BOA s/b/m to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. in June 2018 and then to Plaintiff in August 2018.

According to Plaintiff, in May 2018, facing foreclosure, Decedent executed and delivered a Loan Modification Agreement with Nationstar, which modified the terms of the Promissory Note and Mortgage to, *inter alia*, adjust the principal balance to $727,594.32, which consisted of a $600,000.00 interest-bearing principal balance and $127,594.32 deferred principal balance on which interest would not accrue. Plaintiff contends that the Promissory Note and Mortgage were delivered to Plaintiff and on August 14, 2018 assignment of the Mortgage from Nationstar to Plaintiff was recorded. Fourtner Dec. ¶ 3. However, the assignment recorded in the Nassau County Clerk's Office refers only to the $401,000 mortgage and not the Loan Modification or the increased loan amount. *See* ECF No. 48-7, page 1219. Indeed, on April 19, 2019 Plaintiff filed the Complaint and Notice of Pendency of Action in the Nassau County's Clerk's Office referencing a mortgage of $401,000, not the Loan Modification amount of $727,594.32. Fourtner Dec., Ex. C.

Plaintiff alleges, Decedent failed to make payment in accordance with the terms of the Loan Modification by not making the payment that was due on August 1, 2018 and subsequent payments. Compl. ¶14. The Complaint further alleges that there is now due and owing on the Note and Mortgage the following amounts:

Principal Balance: $598,663.58
Interest from July 1, 2018 to February 3, 2023: $79,980.81
Interest Rate: 2.875%
Deferred Balance:$127,594.32
Late charges: $210.50

The Complaint also seeks late charges, monies advanced for taxes, assessments, insurance,

4

maintenance, and preservation of the Property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure. Younger Aff. ¶ 10. Plaintiff further alleges that it has complied with the Notice Provisions of the Mortgage and RPAPL by sending Notice to the Decedent at the address for the Property. Compl. 17. According to the Younger Affidavit a notice of default dated January 23, 2019 was mailed to the Decedent "c/o Rubin & Licates PC, P.O Box 403 Locust Valley, NY 11560 which is the Defendant's last know address and to 92 Davis Street, Locust Valley, NY 11560 which is the Property address." Younger Aff. ¶ 9. ECF No. 48-1. According to the Statement of Damages submitted by Tracy Fourtner on August 4, 2023, Plaintiff is seeking to recover $924,369.83. Fourtner Dec., Ex. Q, ECF 48-17.

### B. Procedural Background

Plaintiff filed this foreclosure action on April 16, 2019. ECF No. 1. On April 25, 2019, Decedent was personally served with a copy of the summons and complaint at the Property. ECF No. 7. The Decedent, who was not yet deceased, did not interpose an answer and Plaintiff moved for entry of default on May 20, 2019. ECF No. 8. The Clerk of the Court certified Defendant's default based upon her failure to answer or otherwise appear in this action. ECF No. 9. On December 6, 2019, Plaintiff filed a letter requesting a pre-motion conference to seek permission to move for a default judgment. ECF No. 10. By Order dated December 9, 2019, Judge Hurley granted Plaintiff permission to file its motion for a default judgment. Plaintiff filed a motion for default judgment close to two years later on November 11, 2021. The Court is aware that part of the delay may have been caused by the coronavirus pandemic, however, the Clerk entered the default in May 2019, well before the pandemic began. ECF No. 9. Plaintiff's motion for entry of default judgment was referred to the undersigned on November 12, 2021.

In response to the original motion for default judgment, Defendant filed a cross motion to vacate default, grant leave to interpose an answer and to dismiss on December 7, 2021. ECF No 26. Defendant argued that the default judgment should be vacated because she was never served with the Complaint in this action and that once she became aware of the action, she immediately took steps to correct the default. Def. Mem. at 4.

On March 4, 2022, counsel for Defendant filed a letter notifying the Court of the death of Defendant Marlene Sager. ECF No. 32. Judge Hurley stayed the case for 90 days to allow time for a motion for substitution as required by Federal Rule of Civil Procedure ("Rule") 25. On June 1, 2022, Plaintiff filed a motion to substitute Brian R. Sager Jr., Alessandra Sager, and Christopher Sager in the place of the Decedent pursuant to Rule 25(a)(1). ECF No. 33. The motion to substitute was served by US mail. ECF No. 36.

On August 18, 2022, this Court reported and recommended to Judge Brown that the default judgment entered against Defendant should be vacated and Plaintiff's request for a substitution should be denied.[3] On September 13, 2022, counsel for Defendant filed a motion to withdraw as counsel in light of his client's passing. ECF No. 39. By Order dated September 23, 2022, Judge Brown adopted this Court's recommendation that the default judgment be vacated and granted Plaintiff's motion to substitute decedent's three children Brian R. Sager Jr., Alessandra Sager, and Christopher Sager in place of the decedent. ECF No. 40. Additionally, Judge Brown granted counsel's motion to withdraw. *Id*.

On February 13, 2023, Plaintiff requested a certificate of default, which was entered by the Clerk of the Court on the same day. ECF Nos. 42 & 43. Plaintiff waited six months before

---

[3] The Court found that to the extent Defendant's response to the motion for default judgment purports to be a motion to dismiss the complaint, such motion was not properly filed, and was not referred to this Court for a report and recommendation and, therefore, the undersigned did not address Defendant's motion to dismiss.

6

filing its motion for default judgment on August 11, 2023. The motion was referred to the undersigned for a report and recommendation on August 16, 2023.

## DISCUSSION

### A. Legal Standard Governing Default Judgments

Rule 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

### A. Service of Motion for Substitution

7

The undersigned respectfully recommends that Plaintiff's motion for default judgment be denied because Plaintiff has failed to properly serve the Substituted Parties. In connection with a motion to substitute under Rule 25(a), Rule 25 (a)(3) requires that parties be served in accordance with the requirements of Federal Rule 5 and on non-parties in "the manner provided in Rule 4 for the service of a summons." *Id*. "Because 'Rule 4 is 'jurisdictionally rooted,' courts have held that service upon a non-party pursuant to Rule 4 is necessary to obtain personal jurisdiction to substitute them as a defendant under Rule 25(a)(1)." *Bruccoleri v. Gangemi*, No. 17-CV-7443, 2019 U.S. Dist. LEXIS 20943, 2019 WL 499769, at *6 (E.D.N.Y. Feb. 8, 2019) (quoting *Giles v. Campbell*, 698 F.3d 153, 159 (3d Cir. 2012) (quoting *Ransom v. Brennan*, 437 F.2d 513, 517 (5th Cir. 1971))); *see also Fezzani v. Bear, Stearns & Co.*, 99 Civ. 0793 (PAC), 2023 U.S. Dist. LEXIS 124711, 2023 WL 4625544 (S.D.N.Y. July 19, 2023) ("the Court cannot establish personal jurisdiction over nonparties until they have been properly served as parties to this litigation. . . . Therefore, the Court denies the motion to substitute without prejudice pending evidence that both [the parties to be substituted] been properly served pursuant to the procedures clearly articulated in Federal Rules of Civil Procedure 4 and 25(a)(3)") (citations omitted); *Crichlow v. Fischer*, 12-cv-7774 (NSR), 2015 U.S. Dist. LEXIS 18812, 2015 WL 678725, at *5 (S.D.N.Y. Feb. 17, 2015) ("Service of a motion to substitute on the government's attorney after the death of a correctional officer is not effective service on the estate of an officer as a nonparty, in a civil rights action; personal service on the estate representative is required."); *see also Atkins v. City of Chicago*, 547 F.3d 869, 874 (7th Cir. 2008) (holding that motion to substitute filed without serving the personal representative of the deceased's estate was "a nullity").

Service of process upon an individual within a judicial district of the United States is governed by Rule 4(e) which states that service may be completed by:

8

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

    (A) delivering a copy of the summons and of the complaint to the individual personally;

    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). In this case, the applicable state law is governed by Section 308 of the New York Civil Practice Law and Rules ("C.P.L.R.") which provides in pertinent part:

Personal service upon a natural person shall be made by any of the following methods:

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other . . . .

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 . . . .

4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action

9

        against the person to be served, such affixing and mailing to be effected within twenty days of each other . . . .

5.     in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

C.P.L.R. § 308.

With respect to the Substituted Parties, there is no assertion made by Plaintiff that any of the Substituted Parties were personally served. Here, on June 1, 2022, Plaintiff filed an Affidavit of Service of the motion to substitute indicating that service on Brian Sager, Alessandra Sager and Christopher Sager was effectuated by delivering a copy of same by regular mail. ECF No. 36. However, as recognized by the Court in *Ivey v. Albany Cty.*, service in this manner is not proper under Rule 4. No. 20-CV-1617, 2021 U.S. Dist. LEXIS 246305, 2021 WL 6125386, at *4 (N.D.N.Y. Dec. 28, 2021) (Kahn, J.) (citing cases). Thus, pursuant to Rule 25(a)(3), service on the non-parties is insufficient and the Substitution Order was improperly granted, as it was entered before the Substituted Parties were personally served with notice of the motion. *See Giles*, 698 F.3d at 159; *Ransom*, 437 F.2d at 516-519; *Bruccoleri,* 2019 U.S. Dist. LEXIS 20943, 2019 WL 499769, at *6.

"Where a motion to substitute has been improperly granted due to failure to comply with Rule 25(a)(3), the proper remedy is usually vacatur of the substitution order without prejudice to re-file and properly serve the motion, rather than outright dismissal." *Bruccoleri v. Gangemi*, No. 17-CV-7443, 2019 U.S. Dist. LEXIS 20943, 2019 WL 499769, at *6 (E.D.N.Y. Feb. 8, 2019) (citing *Giles*, 698 F.3d at 159; *Ransom*, 437 F.2d at 521; *see also Sheppard v. Beerman*, 822 F.Supp. 931, 942 (E.D.N.Y. 1993) (noting that "the district court retains the power to vacate its own orders"), rev'd on other grounds, 18 F.3d 147 (2d Cir. 1994)).

Accordingly, the undersigned respectfully recommends that Plaintiff's motion for default

judgment be denied because the Court lacks personal jurisdiction over the Substituted Parties.

### B. Standing

Additionally, the undersigned respectfully recommends that Plaintiff's motion for default judgment be denied without prejudice because Plaintiff has failed to demonstrate it has standing to pursue this action. Plaintiff in this action is not an original party to the Note, and therefore the undersigned must address Plaintiff's standing to bring this foreclosure action. *See Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053 (LDH) (TAM), 2023 U.S. Dist. LEXIS 230511, 829 n.11 (E.D.N.Y. Dec. 27, 2023) (raising the issue of standing *sua sponte* on a motion for default); *In re Indu Craft, Inc.,* 630 Fed. App'x 27, 28 (2d Cir. 2015) (it is appropriate for a district court to "raise the issue of standing *sua sponte*") (citing *United States v. Hays,* 515 U.S. 737, 742, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995)); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*") (citations omitted).

"Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *Eastern Sav. Bank, FSB v. Thompson,* 631 F.App'x 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, N.A. v. Rooney,* 19 N.Y.S.3d 543, 544 (2d Dep't 2015)). "Notably, '[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident[.]'" *Id*. (quoting U.*S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)). "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or

11

bears a special indorsement payable to the order of the plaintiff." *Id*. (quoting *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (3d Dep't 2015)).  In the Complaint, Plaintiff alleges "[t]he Mortgage was assigned to U.S. Bank National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2016-CTT," however, Plaintiff has failed to allege that the Note was assigned as well. Compl. ¶13.

Indeed, in the Younger Affidavit Plaintiff acknowledges that the original note has been lost since 2016.  Younger Aff., Ex. 1.  "A plaintiff seeking to recover upon a lost note must provide 'due proof' of the plaintiff's ownership of the note, the facts which prevent production of the note, and the note's terms."  *U.S. Bank Tr., N.A. v. Rose*, 176 A.D.3d 1012, 1014-16, 110 N.Y.S.3d 700 (2d Dep't 2019) (quoting UCC 3-804; and citing *Ventricelli v DeGennaro*, 221 A.D.2d 231, 633 N.Y.S.2d 315 (1st Dep't 1995); *Marrazzo v Piccolo*, 163 A.D,2d 369, 369, 558 N.Y.S.2d 103 (2d Dep't 1990); *Kraft v Sommer*, 54 A.D.2d 598, 598, 387 N.Y.S.2d 318 (4th Dep't 1976)).  "The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms." N.Y. U.C.C. § 3-804.  Thus, to establish standing to pursue foreclosure based on a lost note, a plaintiff must establish "(1) his [or her] ownership, (2) the facts which prevent his [or her] production of the instrument and (3) its terms." *Christiana Tr. v. Moneta*, 186 A.D.3d 1604, 1606, 131 N.Y.S.3d 668 (2d Dep't 2020) (alterations in original) (quoting *U.S. Bank N.A. v. Cope*, 175 A.D.3d 527, 529, 107 N.Y.S.3d 104 (2d Dep't 2019)). "The party seeking to enforce a lost instrument is required to account for its absence." *Id.*

In *U.S. Bank Tr., N.A. v. Rose*, 110 N.Y.S.3d 700 (2d Dep't 2019), the Court found "the plaintiff failed to demonstrate, *prima facie*, the facts that prevented production of the lost note . .

12

.. The affidavit submitted by the plaintiff failed to identify who conducted the search for the lost note (see id. at 528), and failed to explain when or how the note was lost but instead described only approximately when the search for the note was conducted and when the loss was discovered, which was "on or about" the date the affidavit was executed." 176 A.D.3d 1012, 1014-16 (citation and internal quotation omitted); *see also Bank of Am., N.A. v. Sebrow*, 180 A.D.3d 982, 985, 120 N.Y.S.3d 154 (2d Dep't 2020) ("the lost note affidavit failed to sufficiently establish the facts that prevent the production of the original note inasmuch as the plaintiff failed to identify who conducted the search for the lost note and failed to explain when or how the note was lost") (internal quotation omitted). Here, Plaintiff submits affidavit dated November 16, 2016 from a representative of Nationstar, at that time the servicing agent for the loan, and indicating the Note was lost. *See* Younger Aff., Ex. 1. The affidavit does not describe who searched for the Note, or explain when or how the Note was lost. Indeed, nowhere in the affidavit does Nationstar claim to be the owner of the missing Note. The lack of clarity in the lost note affidavit is compounded by the inconsistent Mortgage Assignments filed in the Nassau County Clerk's office, one of which indicates Nationstar was the owner of the Note at the time it was lost and the other which indicates the Note was owned by BOA s/b/m to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. in 2016. In *Windward Bora LLC v. Armstrong*, No. 18-CV-6355, 2021 U.S. Dist. LEXIS 29284, 2021 WL 606713, at *5 (E.D.N.Y. Feb. 16, 2021) the Court issued an order to Show Cause directing Plaintiff to demonstrate standing to foreclose on the loan based upon the lost note affidavit, noting that

> The Lost Note Affidavit states that "[o]n the origination date, the note was duly executed and delivered to the lender. Thereafter, the original note was misplaced, lost or destroyed and after a thorough and diligent search, no one has been able to locate the original note." (Lost Note Aff. ¶ 3). This conclusory paragraph does not identify who conducted the search or what specific efforts were taken. It also does not say when or how the note was lost or destroyed, beyond that it occurred sometime in the twelve-year period between the

13

origination date—March 25, 2005—and the execution of the affidavit—February 10, 2017. This is insufficient.

*Windward Bora LLC v. Armstrong*, No. 18-CV-6355, 2021 U.S. Dist. LEXIS 29284, 2021 WL 606713, at *5 ("It confounds logic for an allonge to be affixed - not just once, but twice-to a note after it as been lost destroyed. If the last assignee plaintiff cannot explain this paradox, it will lack standing to pursue foreclosure).  Similarly, here, the Lost Note Affidavit does not address who conducted the search, how the note was lost, or when, between 2009 and 2016 the Note was lost.

Plaintiff has also failed to demonstrate its ownership of the Note by written assignment. While Plaintiff has provided proof of assignment of the Mortgage, no proof of assignment of the Note has been offered.  "It is the note, and not the mortgage, that is the dispositive instrument that conveys standing to foreclose." *U.S. Bank Nat'l Ass'n v. Richards*, 155 A.D.3d 522, 523, 65 N.Y.S.3d 178 (1st Dep't 2017); *see also US Bank Nat'l Ass'n v. Ciccarelli*, 42 Misc. 3d 1203(A), 984 N.Y.S.2d 635 (Sup. Ct. Suffolk Cty. 2013) ("[i]n a mortgage foreclosure action '[a] plaintiff has standing where it is the holder or assignee of both the subject mortgage and of the underlying note at the time the action is commenced'") (quoting *HSBC Bank USA v Hernandez*, 92 AD3d 843, 939 N.Y.S.2d 120 (2d Dept 2012)); *US Bank, NA v Collymore*, 68 A.D.3d at 753; *Countrywide Home Loans, Inc. v Gress*, 68 A.D.3d 709, 888 N.Y.S.2d 914 (2d Dept 2009). "[T]he transfer of the mortgage without the debt is a nullity, and no interest is acquired by it, because a mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation." *HSBC Bank USA, Nat'l Ass'n v. Roumiantseva,* 130 A.D.3d 983, 984, 15 N.Y.S.3d 117 (2d Dep't 2015).  Plaintiff here has offered no proof of assignment of the Note itself.  In addition, Plaintiff has offered no proof of assignment of the Loan Modification Agreement.  Finally, Plaintiff has failed to explain the assignment of the

14

Mortgage to BOA s/b/m to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing L.P. two months prior to Nationstar's assignment of the Mortgage to Plaintiff. Accordingly, in light of the plethora of deficiencies noted above, the undersigned respectfully recommends Plaintiff's motion for default judgment with leave to refile.

Counsel for Plaintiff is direct to serve a copy of this report and recommendation on each of the Substituted Parties and file an Affidavit of Service on ECF forthwith.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
February 5, 2024

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge